# Illinois Official Reports

## Appellate Court

---

### *In re C.H.*, 2017 IL App (3d) 160729

---

| | |
|---|---|
| Appellate Court Caption | *In re* C.H., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Ricky H., Respondent-Appellant). |
| District & No. | Third District<br>Docket No. 3-16-0729 |
| Filed<br>Modified upon<br>denial of rehearing | September 15, 2017<br><br>January 30, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 16-JA-104; the Hon. Kirk D. Schoenbein, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Linda S. Groezinger, of Peoria, for appellant.<br><br>Jerry Brady, State's Attorney, of Peoria (Patrick Delfino, Lawrence M. Bauer, and Stephanie L. Raymond, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE O'BRIEN delivered the judgment of the court, with opinion.<br>Justice Wright concurred in the judgment and opinion.<br>Justice Schmidt concurred in part and dissented in part, with opinion. |

¶ 1     Petitioner, the State of Illinois, filed a neglect petition alleging that the minor, C.H., was neglected as to medical care and in an injurious environment. The petition named Ricky H. as C.H.'s father. At a dispositional hearing, the trial court found Ricky H. to be a fit parent but ordered that C.H. not be returned home. Ricky appealed. We reverse and remand.

¶ 2     FACTS

¶ 3     The State filed a two-count neglect petition against C.H.'s mother and her father, respondent Ricky H. The amended petition alleged that C.H. was medically neglected due to her parents' failure to provide sufficient medical care and treatment for C.H.'s multiple medical issues. The second count alleged that C.H. was in an injurious environment due to her mother having opiates in her system when she gave birth to C.H.'s sibling in February 2016, the mother's drug use while pregnant with C.H.'s sibling, and C.H.'s untreated medical issues. C.H. was taken into shelter care and placed with Ricky's parents.

¶ 4     In March 2016, Ricky signed a voluntary acknowledgement of paternity. He submitted a mixed answer to the petition in September 2016, stating in part that he lacked legal authority to obtain or schedule medical care for C.H. until March 2016, when he was named C.H.'s legal father. Following a hearing on the petition, the trial court found C.H. neglected but that Ricky did not contribute to the injurious environment.

¶ 5     In October 2016, a dispositional hearing took place. A dispositional court report, integrated assessments, and addendums were submitted. The State presented a proffer regarding C.H.'s lack of medical treatment. The caseworker, C.H.'s mother, and Ricky testified. Evidence presented established that Ricky complied with his service plan tasks, including attending visitation. He voluntarily participated in counseling and a parenting class. He performed drug drops, although he was not ordered to do so, and the results indicated he was not using drugs. Ricky had a driver's license and a part-time job. The trial court found Ricky was fit but that placement was necessary due to the court's concerns that Ricky minimalized C.H.'s medical issues. The court wanted a period of time when C.H. was safe and Ricky could have more visitation with her. The trial court granted the Department of Children and Family Services (DCFS) the right to allow overnight visitation at its discretion and anticipated the case would close at the next hearing. Ricky appealed.

¶ 6     ANALYSIS

¶ 7     The issue on appeal is whether the trial court abused its discretion when it found Ricky a fit parent but ordered continued placement of C.H. in foster care. Ricky argues that he did not contribute to the injurious environment or medical neglect and continued placement is not authorized because the trial court found him fit.

¶ 8     Our supreme court has made it abundantly clear that "section 2-27(1) of the [Juvenile Court Act of 1987 (705 ILCS 405/2-27(1) (West 2012))] does not authorize placing a ward of the court with a third party absent a finding of parental unfitness, inability, or unwillingness to care for the minor." *In re M.M.*, 2016 IL 119932, ¶ 31. We will reverse the trial court's dispositional findings when they are against the manifest weight of the evidence or the trial

court abused its discretion in fashioning an improper dispositional order. *In re M.M.*, 2015 IL App (3d) 130856, ¶ 11.

¶ 9 We addressed this issue in *In re K.L.S-P.*, 383 Ill. App. 3d 287 (2008). In that case, the trial court found the child neglected and the mother " 'fit but reserved.' " *Id.* at 291. Like here, the trial court made the child a ward of the court and granted custody and guardianship to DCFS. *Id.* Unlike the instant case, the State in *K.L.S-P.* did not allege, and the court did not find, that the parent was unable or unwilling to care for the child. *Id.* at 295. Here, the trial court expressed concern with Ricky's ability to sufficiently tend to C.H.'s medical needs. Nevertheless, as we determined in *K.L.S-P.*, "a finding of fitness is, necessarily, a finding of 'fitness *** to care for the minor without endangering the minor's health or safety.' " *Id.* at 296 (quoting 705 ILCS 405/2-23(1)(a) (West 2006)). There is no statutory requirement that the trial court make separate findings of fitness and ability to care for the child. *Id.*

¶ 10 The trial court found Ricky to be a fit parent. The trial court determined Ricky had not contributed to the injurious environment. He was compliant with all service tasks and had performed other tasks, such as drug tests and parenting class, without being ordered to do so. He was welcomed to move into his parents' home, where C.H. was currently placed, once he received custody of her. The home was appropriate. Ricky's other daughter was transitioning to his care, and the sisters were forming a bond. He was employed. He and C.H.'s mother were not living together and were no longer in a romantic relationship. Ricky was not legally determined to be C.H.'s father until March 2016, limiting his ability to be involved in her medical care after she was in foster care. He would accompany his mother to C.H.'s appointments when he could but was again limited by placement restrictions. We acknowledge the trial court's concerns over Ricky's ability to address C.H.'s medical needs but find no evidence that Ricky was unable or unwilling to accept those responsibilities.

¶ 11 Despite the trial court's concerns, it still determined Ricky to be a fit parent. A parent is either fit or unfit. *In re R.W.*, 371 Ill. App. 3d 1171, 1174 (2007). Once the trial court made a finding that Ricky was a fit parent and not otherwise unable or unwilling to care for C.H. it was not authorized to place C.H. in the custody of DCFS. *K.L.S-P.*, 383 Ill. App. 3d at 295. We find the trial court abused its discretion when it did not return C.H. to Ricky's custody after finding him fit.

¶ 12 For the foregoing reasons, the judgment of the circuit court of Peoria County is reversed and the cause is remanded.

¶ 13 Reversed and remanded.

¶ 14 JUSTICE SCHMIDT, concurring in part and dissenting in part:

¶ 15 I agree that without specific findings that the respondent was either unfit, unable, or unwilling to care for C.H., the trial court erred in placing C.H. with a third party. *In re M.M.*, 2016 IL 119932, ¶ 31. However, it also seems clear that, while the trial judge failed to make a specific finding that respondent was unable to care for C.H.'s medical needs, it had very specific concerns in that regard and spent much time discussing them.

¶ 16 The trial judge found C.H. to be medically neglected. He expressed concern over respondent's "minimizing of the neglect that happened." The trial judge noted, "I do find that placement is necessary because I'm concerned about his minimizing of the neglect that

happened." It is clear that C.H. suffers from some complex medical issues. When questioned about C.H.'s medical appointments, respondent stated that he has to "consult with my mother" and that "she lets me know when they are and I go with her if I'm available and can." As in *M.M.*, I believe the better remedy here would be to reverse and remand to the trial court " 'so that the trial court may enter explicit, specific findings consistent with the requirements of section 2-27(1).' " *Id.* ¶ 11 (quoting *In re M.M.*, 2015 IL App (3d) 130856, ¶ 16)); see also *In re Madison H.*, 215 Ill. 2d 364, 377 (2005).